## T. A. McCANN et al. v. JOHN CARLSON et al.

### (144 N. W. 92.)

The voters of Mountrail county authorized the issuance of $50,000 in bonds to provide a courthouse for the county. The county commissioners advertised for bids and made a contract with one Bartleson at $49,660. All proceedings are conceded to be regular, unless it be the three specific objections raised by plaintiffs in this action.

Contract — bond — furnished after signing contract — mere irregularity — does not vitiate contract.

1. It is claimed that the contract with Bartleson is void because the bond given by said contractor was not furnished until after the signing of the contract. Held, that this is a mere irregularity which makes the members of the board liable personally for certain claims against the building, but does not vitiate the contract.

Contract — courthouse site — donation — title — presumption.

2. It is claimed that said contract is void because the title to the courthouse site had not been vested in the county prior to the signing of the contract. From the evidence, however, it appears that one Taylor has agreed to donate a site, and that his offer has been accepted by the board. In the absence of a showing to the contrary, it will be presumed that the board has an enforceable contract with Taylor, and is in a position to obtain title to the site when necessary.

Contract — courthouse — commissioners — have complete supervision.

3. The third reason for an attack upon the contract is that it contains no

provision for lighting, heating, and sewerage systems. Plaintiffs contend that the building without such appliances is useless for courthouse purposes, and that the commissioners intend to supply these additions from other funds not authorized by the voters to be so expended. *Held*, that under § 2566, Rev. Codes 1905, the county commissioners are given entire supervision of the construction of such courthouse, and the courts will not interfere with such supervision so long as the board is exercising its discretion in good faith. The board in this instance is not expending more than the $50,000 authorized. This court will not anticipate any illegal action upon their part. It is admitted that there is at the present time no electric light plant, no city waterworks, and no sewerage system, in the town where the said courthouse is to be erected, and it rests in the sound discretion of the board of county commissioners to say whether the said courthouse shall contain those appliances at the present time.

Opinion filed November 15, 1913.

Appeal from the District Court of Mountrail County, *Frank E. Fisk, J.*

Affirmed.

*Palda, Aaker & Greene,* for appellants.

The trial court should have granted a permanent injunction. There was no provision made for the safe, convenient, and sanitary equipment of the courthouse. Judicial power is exercised, not to give effect to the will of the judge, but to carry out the will of the law, and give it effect. Osborn v. Bank of United States, 9 Wheat. 738, 6 L. ed. 204.

Boards of county commissioners have no power or discretion in the performance of a public duty in any other manner than as directed by law. McKinnon v. Robinson, 24 N. D. 367, 139 N. W. 580; Zerwekh v. Thornburg, 123 Iowa, 254, 98 N. W. 769; Rev. Codes 1905, §§ 2406, 2412, 2563, 2566, 2568.

*F. F. Wyckoff,* for respondents.

The statute requiring bond before execution of contract was substantially complied with. The intent of the statute is to protect materialmen and laborers, and provides a remedy in case of noncompliance. Such remedy is exclusive. Rev. Codes 1905, §§ 6252, 6255; Bassett v. Carleton, 32 Me. 553, 54 Am. Dec. 605; Calking v. Baldwin, 4 Wend. 667, 21 Am. Dec. 168.

When a contract is open to two or more constructions, courts will

seek to give to it such construction as will sustain, rather than destroy, it. Sarles v. Sharlow, 5 Dak. 100, 37 N. W. 751.

It was the duty of the commissioners to erect the courthouse within one year after the fund therefor became available. Rev. Codes 1905, § 2420.

The entire supervision of the building of the courthouse is left to the discretion of the county commissioners. Rev. Codes 1905, §§ 2566, 2568.

This is true of all fiscal affairs. Rev. Codes 1905, § 2401.

If the contract is valid, and if the commissioners have proceeded to exercise their power and discretion in a lawful manner thereunder, the court should not restrain its performance. Hanley v. County Ct. 50 W. Va. 439, 40 S. E. 389.

BURKE, J. At the general election held in Mountrail county in 1912, the voters authorized the issuance of $50,000 in bonds for the purpose of providing a courthouse for said county. The bonds were sold at par, and the county commissioners thereupon proceeded to advertise for bids for the construction of said building, which bids were receivable August 12, 1913. The defendant Bartleson was the lowest responsible bidder, and received the contract at $49,660. The 5th day of August, 1913, such contract was formally signed, and thereafter, and on the 3d day of September, 1913, said Bartleson executed and filed a bond for the faithful performance of his part of the contract. At the time of the execution of the said contract, one Taylor had offered to donate a site for the courthouse and his offer had been accepted by said county commissioners. It is contended that Mr. Taylor had not at that time any title to the property, but had made arrangements for condemning part thereof. The contract entered into with Bartleson contains no provisions for modern heating, lighting, or sewerage systems. On the 23d of September, 1913, this action was commenced, accompanied by the service of a temporary restraining order, and such restraining order was later, and after a hearing, dissolved by the trial court. This appeal is from such order.

Appellant assigns three propositions in support of such restraining order. It is conceded that the question of the erection of the courthouse and the issuance and sale of the bonds had been authorized by

a vote of the people, and that all steps leading up to the said contract were regular, excepting in the three aforesaid particulars.

(1) First, appellant insists that the contract was void because the bond furnished by the contractor under §§ 2421, 6252–6255, Rev. Codes 1905, was not furnished until after the signing of the contract. In this we cannot agree with appellant. The said sections could not have contemplated that a failure to give the bond prior to the actual signing of the contract should vitiate the contract, because § 6253 provides that "the members of any board who shall fail to take such a bond before entering into such a contract shall be personally liable for all such bills, claims, and demands which shall not be paid within thirty days after the completion of the work." In this instance the bond had been furnished, approved, and filed before this action was commenced, and we think it plain that the contract is not assailable by reason of the irregularity.

(2) It is next alleged that the contract is void because the title to the courthouse site had not been vested in the county at the time of the execution of the contract. From the minutes of the county commissioners it appears that one B. W. Taylor had offered to donate a tract of land 223′ x 432′, which was owned by him, and had also offered to pay all costs and damages that the county might incur in condemnation proceedings in acquiring an adjoining tract of the same area. This offer had been accepted by the board, and in the absence of a showing to the contrary, it will be presumed that the county commissioners have taken all due precautions in the premises, and that they can compel Mr. Taylor to fulfil his contract, and that they will obtain the title to the tract in due time.

(3) The third attack upon the contract, and in fact the principal one relied upon by the defendant, is that the contract itself makes no provision for lighting, heating, and sewerage systems. Appellant contends that the voters, in authorizing the commissioners to spend $50,-000 in providing the county with a courthouse, had limited them to that amount, and that they were entitled to have a modern building costing that sum. They say that a building without those appliances would be absolutely of no use as a courthouse, and that the commissioners must intend to spend more money later on, to make those additions, at an increased cost to the taxpayers. They contend that it

is not within the power of the commissioners to go beyond the said sum of $50,000, and that if they are not restrained, the entire fund will be practically consumed in the erection of a building which contains no modern conveniences, and will therefore be useless as a courthouse. There are several reasons why we cannot accept this view of the proceedings. In the first place, the county commissioners are not trying to spend more than the $50,000. If they were, the situation would be entirely different. They are keeping within their expenditures, and those expenditures have been duly authorizd by the voters of that county. The question then narrows itself to this: Can the courts, in an equitable action such as this, supervise the county commissioners in the exercise of their discretion, and tell them the kind of a courthouse that they must erect? We do not think that the courts have that power. Supervision of this important work must be delegated to some responsible body of men, and the legislature has seen fit to repose that discretion in the board of county commissioners. Section 2566, Rev. Codes 1905, reads: "The board of county commissioners of any county, erecting county buildings under the provisions of this subdivision, shall have power to purchase grounds for a site if necessary, let contracts for the building and completion of such courthouse or jail, or both, and the buildings connected therewith, and shall have the entire supervision of its construction. . . ." So long as the commissioners are exercising this discretion in good faith, they should not be molested by the courts. Nor will we infer that they will later on violate their oaths of office by making expenditures unauthorized by a vote of the people, and we cannot anticipate such an action by an injunction in the present suit. There is nothing in this record to show that modern heating, lighting, and sewerage plants cannot be installed in this building at a later date without injury to the building or extraordinary costs. If the voters at a subsequent election authorize expenditures of such additional sums, we see no reason why the commissioners cannot have the two contracts so merged as to protect the interests of the taxpayers in the premises. And even should such expenditures be denied by the voters, we do not believe it an abuse of discretion upon the part of the county commissioners to heat the building with stoves and light it with kerosene lamps. It is admitted that

at the present time the county seat of Mountrail county has no electric light plant, no city waterworks, and no sewerage system.

Appellant has cited the case of McKinnon v. Robinson, 24 N. D. 367, 139 N. W. 580, as an authority for the granting of an injunction in this case. The cases are not at all similar. In the Richland county case the building fund had been wrongfully diverted from other funds of the county, and the proposition of erecting a new courthouse had never at any time been submitted to a vote of the people. The contract had not been let by competitive bidding, and the contract price was much greater than the total funds on hand from even the illegal sources. It is true that in the Richland county case the contract failed to provide for electric lights, steam heating, and other modern conveniences. But those are incidentals and of minor importance when compared with the glaring defects before enumerated.

The order of the trial court in dissolving the temporary injunction is in all things affirmed.